PEOPLE ex rel. LAVIER v. HESSLER, Commissioner of Public Safety.

(Supreme Court, Appellate Division, Fourth Department.   October 8, 1912.)

LICENSES (§ 22*) — HEALTH — PLUMBERS — REGULATION — EXAMINATION AND CERTIFICATION—CERTIFICATE OF COMPETENCY FROM OTHER CITY—DUTY TO ACCEPT.

General City Law (Consol. Laws 1909, c. 21) § 44, subd. 2, provides for the examination and licensing of employing plumbers by an examining board, and section 45 makes it unlawful for any person to conduct such business unless licensed.   Section 46 provides that a master plumber is entitled to a certificate of registration, providing he holds a certificate of competency from an examining board of plumbers.   Section 46 prohibits the issuance of a license to make sewer and water connections, unless the applicant obtains and produces a certificate of competency from the examining plumbers' board of the city; and section 45 requires that the certificate must be from the city in which the master plumber conducts or proposes to conduct his business.   *Held*, that where relator, a man 60 years of age and of alleged competency, after having obtained a certificate of competency on examination by the supervising board of plumbers of another city, moved to S. and sought to continue his business there, he was not entitled to registration on his former certificate, without having taken a new examination before the board in S.

[Ed. Note.—For other cases, see Licenses, Cent. Dig. §§ 57–59; Dec. Dig. § 22.*]

Appeal from Special Term, Onondaga County.

Mandamus by the People, on relation of Charles Lavier, against Hollister E. Hessler, as Commissioner of Public Safety of the City of Syracuse.   From an order directing the issuance of a writ of mandamus requiring respondent to register as an employing or master plumber, respondent appeals.   Reversed.   Writ denied.

The relator, a man about 60 years of age, had long been a master plumber, and on October 14, 1909, a certificate of competency was duly issued to him, after a satisfactory examination, by the supervising board of plumbers and plumbing of the city of Fulton, in this state, where he then resided.   Later the relator became a resident of the city of Syracuse, and in February, 1912, presented the certificate of competency to the defendant, requesting that he be registered as an employing or master plumber.   The defendant, who is the commissioner of public safety of the city and its principal health officer, refused to register the relator, on the ground that he must first present a certificate of competency from the examining board of the city of Syracuse. Thereupon the relator applied to the Special Term of the Supreme Court for a writ of peremptory mandamus, requiring the defendant to register the petitioner with the board of health of said city as an employing or master plumber, and to issue to said petitioner a certificate of such registration, which order was granted.   The Special Term held that the certificate of competency issued by the examining board of the city of Fulton was sufficient to require the registration by the defendant, and that a certificate from the similar board of the city of Syracuse was not necessary.

Argued before McLENNAN, P. J., and SPRING, KRUSE, ROBSON, and FOOTE, JJ.

Walter W. Magee, Corp. Counsel, of Syracuse, for appellant.

Frank Hopkins, of Syracuse, for respondent.

SPRING, J.   The question at issue involves the construction of the provisions of the statute regulating the conduct of plumbers

by the officers or boards charged with that duty, and which provisions are contained in section 40 of the General City Law (chapter 21 of the Consolidated Laws). Each examining board is composed of five members, appointed by the mayor of the city. By section 44, subd. 2, it is made the duty of the board—

"to examine all persons desiring or intending to engage in the trade, business or calling of plumbing as employing plumbers in the city in which said board shall be appointed with the power of examining persons applying for certificates of competency as such employing or master plumbers, * * * to determine their fitness and qualifications for conducting the business of master plumbers, * * * and to issue certificates of competency to all such persons who shall have passed a satisfactory examination before such board and shall be by it determined to be qualified for conducting the business as employing or master plumbers. * * * "

By subdivision 3 this board, in conjunction with the local board of health, is directed to formulate a code of rules—

"regulating the work of plumbing and drainage in such city, including the materials, workmanship and manner of executing such work."

Section 45 is as follows:

"A person desiring or intending to conduct the trade, business or calling of a plumber or of plumbing in a city of this state as employing or master plumber, shall be required to submit to an examination before such examining board of plumbers as to his experience and qualifications for such trade, business or calling, and it shall not be lawful in any city of this state for a person to conduct such trade, business or calling, unless he shall have first obtained a certificate of competency from such board of the city in which he conducts or proposes to conduct such business."

Section 46 provides:

"Every employing or master plumber carrying on his trade, business or calling in any city of this state shall register his name and address at the office of the board of health of the city in which he shall conduct such business, under such rules as the respective boards of health of each of the cities shall prescribe, and thereupon he shall be entitled to receive a certificate of such registration provided, however, that such employing or master plumber shall at the time of applying for such registration hold a certificate of competency from an examining board of plumbers."

By section 47 no one can lawfully engage in the business of employing or master plumber in any city of the state—

"unless his name and address shall have been registered in the city in which he carries on or conducts such business."

By section 50 all certificates of registration and all licenses authorizing connections with street sewers or water mains expire on the 31st day of December after their issuance, with the privilege of renewal within the 30 days preceding expiration, and to continue effective for one year from January 1st thereafter.

By section 56 no license shall be issued to any one—

"to connect with the sewers or with the water mains of such cities, unless such person has obtained and shall produce a certificate of competency from the examining board of such city."

The policy of the Legislature by this legislation apparently was to vest in the examining board of each city the exclusive authority to pass upon the qualifications of an applicant to carry on the work

of master plumber in that city, and its certificate of competency is an essential prerequisite to registration. The presentation of this certificate entitles the applicant to registration, as the commissioner of public safety possesses no authority to refuse registration if the proper certificate is presented.

There does not seem to be anything in the statute prescribing uniformity in the tests or examinations made by the examining boards. Each board provides its own method of ascertaining the fitness of the applicant for the position of master plumber, and conditions may not be alike in any two cities. A man may be eminently qualified to perform the duties of master plumber in the small city of Fulton, and yet lack the requisite qualifications to enable him to carry on that calling to the safety of the people in a large city like Syracuse. In any event, the people of the larger city should be permitted to determine as to the efficiency of the person for the business. The certificate of the board of another city, whose members and the nature of the examination had are unknown to the commissioner of public safety, should not be sufficient to obtain registration.

The trend of modern legislation is toward vesting in each municipality the management of its local affairs. Responsibility can then be brought home to the body charged with the performance of any specific duty, and the members will probably be known to the people of the city. The endowment of the examining board of a city with the authority and duty to determine as to the competency of one seeking to act as employing or master plumber is an advanced instance of this tendency of our Legislature, and the legality of the act has been sustained. People ex rel. Nechamcus v. Warden, etc., 144 N. Y. 529, 39 N. E. 686, 27 L. R. A. 718. Section 45, referred to, is a substantial re-enactment of the Plumbing Act of 1892 (Laws 1892, c. 602), which was upheld in that case.

The members of the examining boards are charged with the performance of important functions in the domestic economy of the city. The good health of the people of the city may be imperiled by an incompetent plumber. The dereliction of, or any favoritism by, the board will soon become known, and responsibility therefor can be brought home to the mayor or the members of the board he selected. If, however, the certificate of an examining board of another city is to be made the basis for the issuance of the certificate by the board of registration, without any examination by the local body, there is no one to whom responsibility for the inefficiency of the applicant can be imputed. There is far more danger of remissness or favoritism in a body acting upon the application of one of its citizens who expects to change his residence and conduct his business in another city than in a board whose action is subject to inspection by the people to whom it is directly responsible.

The counsel for the respondent rests his claim to support the order appealed from upon that portion of section 46 providing that a master plumber is entitled to a certificate of registration "provided he holds a certificate of competency from *an* examining board of plumbers." To be sure, this does not prescribe that the certificate must be from the board of the city where he is to conduct his business. There are

other explicit provisions, already quoted, indicating that such was the intention of the Legislature. Connecting with the sewers and water mains of the city is an important part of the business of the plumber, and the statute (section 46) prohibits the issuing of a license to make such connections unless the applicant "obtains and produces a certificate of competency from the examining board of such city"; and section 45, of more general application, requires that the certificate must be from the board of the city "in which he conducts or proposes to conduct such business."

If it was the policy of the Legislature to make the certificate of competency from the board of another city as effective as if granted by the city where the business is to be conducted, thus materially trenching upon the authority of the local body, we should expect to find explicit authority for the innovation. The justification for the legislation is that it is for the benefit of the public health of the people. In order to make this object effective, the officials of the city where the business is to be conducted can better determine what test or examination should be applied to an applicant for the calling of master plumber than the officials of some other city.

Nor does any harm result to the relator, if he is competent, from the enforcement of the requirement that he must first present the certificate of the board in Syracuse. He has had long experience and claims to be very efficient, and, if so, could pass the examination which is the test for his competitors in the business in that city. His certificate at Fulton was granted in October, 1909, and since that time he has gained a residence in Syracuse, and before carrying on his business in that city he should comply with the requirements in force there, and that rule would only put him on a level with other applicants for the certificate of competency.

The order should be reversed, with $10 costs and disbursements, and the application for the writ denied, with $10 costs. All concur.